NEW YORK STATE SUPREME COURT
ERIE COUNTY

-----------------------------------------------------------------X

MICHAEL SCHALL, DANIEL TRAINA, ROBERT
O'DONNELL, T.T., and M.J.D.,

Plaintiffs,

-against-

BOY SCOUTS OF AMERICA and GREATER
NIAGARA FRONTIER COUNCIL,

Defendants.

-----------------------------------------------------------------X

Index No.: _____

Date Filed: _____

**SUMMONS**

Plaintiffs designate Erie County as the place of trial.

The basis of venue is one defendant's residence.

**Child Victims Act Proceeding**
**22 NYCRR 202.72**

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiffs' attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  August 14, 2019

Respectfully Yours,

MARSH LAW FIRM PLLC

By _____
James R. Marsh
151 East Post Road, Suite 102
White Plains, NY 10601-5210
Phone: 929-232-3235
jamesmarsh@marsh.law

Jennifer Freeman
151 East Post Road, Suite 102
White Plains, NY 10601-5210
Phone: 929-232-3128
jenniferfreeman@marsh.law


PFAU COCHRAN VERTETIS AMALA PLLC


By _____
Michael T. Pfau
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone:  206-462-4335
michael@pcvalaw.com
*Pro hac vice forthcoming*

Jason P. Amala
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone:  206-462-4339
jason@pcvalaw.com
*Pro hac vice forthcoming*

Anelga Doumanian
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone:  206-451-8260
adoumanian@pcvalaw.com

Attorneys for Plaintiffs

2

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 3 of 78

NEW YORK STATE SUPREME COURT
ERIE COUNTY

-------------------------------------------------------------------X

MICHAEL SCHALL, DANIEL TRAINA, ROBERT O'DONNELL, T.T., and M.J.D,

Plaintiffs,

-against-

BOY SCOUTS OF AMERICA and GREATER NIAGARA FRONTIER COUNCIL,

Defendants.

-------------------------------------------------------------------

Index No.: _____/__

**COMPLAINT**

**Child Victims Act Proceeding 22 NYCRR 202.72**

Plaintiffs, by and through their attorneys, the Marsh Law Firm PLLC and Pfau Cochran Vertetis Amala PLLC, respectfully allege for their complaint the following:

## I.   INTRODUCTION

1.      Starting in the early 1900s, the Boy Scouts of America ("BSA") knew that its Scout leaders, volunteers, and members were using their positions to groom and to sexually abuse children. By 1935, the Chief Scout Executive of the BSA told the New York Times that almost 1,000 men had already been removed from Scouting because they "undertake to deal with sex matters and become morbid on the subject and sometimes give way to temptation and develop practices which make them degenerates."

2.      The BSA refers to its internal files on such men as its "perversion" files.  Since that 1935 report in the New York Times, the BSA has tried to keep the "perversion" files a secret. Even worse, for many years the BSA had a policy of destroying "perversion" files even though the files could have helped the BSA understand how so many sexual predators were able to use its Scouting program to groom and to sexually abuse children.

3.      The BSA has largely succeeded in keeping the "perversion" files hidden from the public, including Scouts and their parents. While not much is known about the files after 1985, the

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 4 of 78

files that were not destroyed show that the BSA created at least 1,123 "perversion" files between 1965 and 1985 – an average of more than one new "perversion" file a week.

4.      While the sheer number of Scout leaders who have been accused of molesting children is striking, particularly given the large percentage that either pled guilty or were found guilty, the number of their victims is overwhelming.  Many of the files reflect Scout leaders who allegedly abused multiple children, sometimes more than twenty or thirty children.

5.      The BSA refuses to voluntarily release the rest of its "perversion" files, but its own liability expert in another case testified that the files from 1944 through 2016 contain the names of 7,819 Scout leaders and volunteers who have been accused of child sexual abuse.  If each accused Scout leader and volunteer abused five children, which is likely a conservative number, the total number of their victims would be close to 40,000.

6.      Despite decades' of knowledge that its Scouting program was a magnet for child molesters, the BSA failed to take reasonable steps to protect children from being sexually abused.

7.      Even worse, the BSA actively concealed the widespread sexual abuse of young boys that occurred as a direct result of its supposedly "safe" program and "trustworthy" Scout leaders and volunteers.  For example, in 1972, the Boy Scout Executive who oversaw the "perversion" files asked the other Scout Executives to keep the files confidential "because of the misunderstandings which could develop" if the public learned of the files.

8.      Based on the BSA's wrongful conduct, a reasonable person could and would conclude that it knowingly and recklessly disregarded the abuse of children and chose to protect its reputation and wealth over those who deserved protection. The result is not surprising: for decades thousands of children were sexually abused by Boy Scout leaders, volunteers, and

2

members. The plaintiffs in this lawsuit are some of those children who were sexually abused because of the BSA's wrongful conduct.

## II.    PROCEEDING IN ACCORDANCE WITH CPLR 214-G AND 22 NYCRR 202.72

9.      This complaint is filed pursuant to the Child Victims Act (CVA) 2019 Sess. Law News of N.Y. Ch. 11 (S. 2440), CPLR 214-G, and 22 NVCRR 202.72. The CVA opened a historic one-year one-time window for victims and survivors of childhood sexual abuse in the State of New York to pursue lapsed claims. Prior to the passage of the CVA, each plaintiff's claims were time-barred the day they turned 22 years old. The enactment of the CVA allows plaintiffs, for the first time in their lives, to pursue restorative justice in New York State.

## III.    PARTIES

10.      Upon information and belief, the BSA is a Texas corporation authorized to do business in New York with its principal office in Irving, Texas.

11.      Upon information and belief, at all relevant times the BSA conducted business as the "Boy Scouts of America" or the "Boy Scouts."

12.      Upon information and belief, at all relevant times the BSA authorized local councils and local organizations to charter, sponsor, and operate Boy Scout Troops, Cub Scout Troops, and other types of Troops throughout New York, including the Troop of each plaintiff.

13.      The BSA, the local councils, and the local organizations would collectively select the leaders and volunteers of each Boy Scout Troop and Cub Scout Troop in New York, including the leaders and volunteers of the Troop of each plaintiff.

14.      However, the BSA retained and exercised the ultimate authority to decide who could be a leader or volunteer of any Boy Scout Troop or Cub Scout Troop, including the leaders and volunteers of the Troop of each plaintiff when they were sexually abused.

3

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 6 of 78

15.     The BSA also had the right to control the means and manner of the staffing, operation, and oversight of any Boy Scout Troop, Cub Scout Troop, or other type of Troop, including the Troop of each plaintiff when they were sexually abused.

16.     In exchange for BSA's name, programming, and endorsement, the leaders, volunteers, and members of every Boy Scout Troop, Cub Scout Troop, or other Troop affiliated with the BSA in the United States, including New York, would pay the BSA an annual membership fee, including the leaders, volunteers, and members of each plaintiff's Troop when they were sexually abused.

17.     In exchange for the opportunity to participate in the BSA's programming and activities, the child members of every Boy Scout Troop, Cub Scout Troop, and other Troop affiliated with the BSA in the United States, including those in New York, would pay the BSA an annual membership fee, including each plaintiff when they were a child member.

18.     Plaintiff Michael Schall is an adult male who currently resides in Portland, Oregon.

19.     Upon information and belief, Scoutmaster Robert Eberhardt ("Eberhardt") was a Boy Scout leader or volunteer that the BSA used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff Michael Schall's Boy Scout Troop.

20.     During the time that Eberhardt served as a Boy Scout leader or volunteer for the BSA, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff Michael Schall.

21.     To the extent that the BSA was a different entity, corporation, or organization during the period of time in which Eberhardt used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff Michael Schall, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

22.    To the extent the BSA is a successor to a different entity, corporation, or organization which existed during the period of time during which Eberhardt used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff Michael Schall, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

23.    All such BSA-related entities, corporations, or organizations are collectively referred to herein as the "BSA."

24.    Upon information and belief, at all relevant times defendant the Greater Niagara Frontier Council, Boy Scouts of America ("Greater Niagara Council"), was a New York corporation organized under New York law that transacted business in Erie County.

25.    Upon information and belief, the Greater Niagara Council is currently a corporation organized under New York law with its principal office in Buffalo, New York.

26.    Upon information and belief, at all relevant times the Greater Niagara Council was a local council of the BSA that acted as an agent of the BSA as to the Boy Scout Troops, Cub Scout Troops, and other Troops under its jurisdiction within the BSA, including the Boy Scout Troop of plaintiff Michael Schall when he was sexually abused by Scoutmaster Robert Eberhardt.

27.    Upon information and belief, at all relevant times the Greater Niagara Council conducted business as the "Greater Niagara Frontier Council" and the "Greater Niagara Council."

28.    Upon information and belief, Scoutmaster Robert Eberhardt was a Boy Scout leader or volunteer that the Greater Niagara Council used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff Michael Schall's Boy Scout Troop.

29.    During the time that Eberhardt served as a Boy Scout leader or volunteer for the Greater Niagara Council, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff Michael Schall.

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 8 of 78

30.     To the extent that the Greater Niagara Council was a different entity, corporation, or organization during the period of time in which Eberhardt used his position as a Boy Scout leader to sexually abuse plaintiff Michael Schall, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

31.     To the extent the Greater Niagara Council is a successor to a different entity, corporation, or organization which existed during the period of time during which Eberhardt used his position as a Boy Scout leader to sexually abuse plaintiff Michael Schall, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

32.     All such Greater Niagara Council-related entities, corporations, or organizations are collectively referred to herein as the "Greater Niagara Council."

33.     Plaintiff Daniel Traina is an adult male who currently resides in Pittsford, New York.

34.     Upon information and belief, Assistant Scoutmaster Robert Moll, Jr. ("Moll") was a Boy Scout leader or volunteer that the BSA used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff Daniel Traina's Boy Scout Troop.

35.     During the time that Moll served as a Boy Scout leader or volunteer for the BSA, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff Daniel Traina.

36.     To the extent that the BSA was a different entity, corporation, or organization during the period of time in which Moll used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff Daniel Traina, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

6

37.     To the extent the BSA is a successor to a different entity, corporation, or organization which existed during the period of time during which Moll used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff Daniel Traina, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

38.     All such BSA-related entities, corporations, or organizations are collectively referred to herein as the "BSA."

39.     Upon information and belief, at all relevant times the Greater Niagara Council was a local council of the BSA that acted as an agent of the BSA as to the Boy Scout Troops, Cub Scout Troops, and other Troops under its jurisdiction within the BSA, including the Boy Scout Troop of plaintiff Daniel Traina when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

40.     Upon information and belief, Assistant Scoutmaster Robert Moll, Jr. was a Boy Scout leader or volunteer that the Greater Niagara Council used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff Daniel Traina's Boy Scout Troop.

41.     During the time that Moll served as a Boy Scout leader or volunteer for the Greater Niagara Council, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff Daniel Traina.

42.     To the extent that the Greater Niagara Council was a different entity, corporation, or organization during the period of time in which Moll used his position as a Boy Scout leader to sexually abuse plaintiff Daniel Traina, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

43.     To the extent the Greater Niagara Council is a successor to a different entity, corporation, or organization which existed during the period of time during which Moll used his

7

position as a Boy Scout leader to sexually abuse plaintiff Daniel Traina, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

44.     All such Greater Niagara Council-related entities, corporations, or organizations are collectively referred to herein as the "Greater Niagara Council."

45.     Upon information and belief, at all relevant times the BSA and the Greater Niagara Council owned and operated Schoellkopf Scout Reservation and other properties near Bonds Lake, located in and around Buffalo, New York, and they hired, supervised, and retained the staff, leaders, and volunteers who operated, coordinated, and supervised the camp.

46.     Upon information and belief, the BSA and the Greater Niagara Council used the camp to promote and benefit their Scouting program, including during the times that plaintiff Daniel Traina attended the camp and was sexually abused at the camp, and both defendants generated revenue from the camp operations, including fees paid by Daniel and his family so he could attend the camp and participate in its activities.

47.     Plaintiff Robert O'Donnell is an adult male who currently resides in Boston, New York.

48.     Upon information and belief, Scoutmaster Ronald Williams ("Williams") was a Boy Scout leader or volunteer that the BSA used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff Robert O'Donnell's Boy Scout Troop.

49.     During the time that Williams served as a Boy Scout leader or volunteer for the BSA, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff Robert O'Donnell.

50.     To the extent that the BSA was a different entity, corporation, or organization during the period of time in which Williams used his position as a Boy Scout leader or volunteer

to sexually abuse plaintiff Robert O'Donnell, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

51.     To the extent the BSA is a successor to a different entity, corporation, or organization which existed during the period of time during which Williams used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff Robert O'Donnell, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

52.     All such BSA-related entities, corporations, or organizations are collectively referred to herein as the "BSA."

53.     Upon information and belief, at all relevant times the Greater Niagara Council was a local council of the BSA that acted as an agent of the BSA as to the Boy Scout Troops, Cub Scout Troops, and other Troops under its jurisdiction within the BSA, including the Boy Scout Troop of plaintiff Robert O'Donnell when he was sexually abused by Scoutmaster Ronald Williams.

54.     Upon information and belief, Scoutmaster Ronald Williams was a Boy Scout leader or volunteer that the Greater Niagara Council used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff Robert O'Donnell's Boy Scout Troop.

55.     During the time that Williams served as a Boy Scout leader or volunteer for the Greater Niagara Council, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff Robert O'Donnell.

56.     To the extent that the Greater Niagara Council was a different entity, corporation, or organization during the period of time in which Williams used his position as a Boy Scout leader

9

to sexually abuse plaintiff Robert O'Donnell, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

57.     To the extent the Greater Niagara Council is a successor to a different entity, corporation, or organization which existed during the period of time during which Williams used his position as a Boy Scout leader to sexually abuse plaintiff Robert O'Donnell, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

58.     All such Greater Niagara Council-related entities, corporations, or organizations are collectively referred to herein as the "Greater Niagara Council."

59.     Plaintiff T.T. is an adult male who currently resides in North Tonawanda, New York.

60.     While he was a minor, plaintiff T.T. was a victim of one or more criminal sex acts in the State of New York. Since such criminal violation is the basis for this action, plaintiff T.T. is entitled to the protection of Civil Rights Law 50-b and will file a motion asking this Court for permission to proceed using a pseudonym.

61.     In the alternative, plaintiff T.T. will seek a stipulation from the defendants agreeing to enter into a protective order which will ensure that his identity is protected from the public while allowing the defendants full access to information necessary for their defense.

62.     Upon information and belief, Assistant Scoutmaster Robert Moll, Jr. ("Moll") was a Boy Scout leader or volunteer that the BSA used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff T.T.'s Boy Scout Troop.

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 13 of 78

63.     During the time that Moll served as a Boy Scout leader or volunteer for the BSA, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff T.T.

64.     To the extent that the BSA was a different entity, corporation, or organization during the period of time in which Moll used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff T.T., such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

65.     To the extent the BSA is a successor to a different entity, corporation, or organization which existed during the period of time during which Moll used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff T.T., such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

66.     All such BSA-related entities, corporations, or organizations are collectively referred to herein as the "BSA."

67.     Upon information and belief, at all relevant times the Greater Niagara Council was a local council of the BSA that acted as an agent of the BSA as to the Boy Scout Troops, Cub Scout Troops, and other Troops under its jurisdiction within the BSA, including the Boy Scout Troop of plaintiff T.T. when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

68.     Upon information and belief, Assistant Scoutmaster Robert Moll, Jr. was a Boy Scout leader or volunteer that the Greater Niagara Council used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff T.T.'s Boy Scout Troop.

69.     During the time that Moll served as a Boy Scout leader or volunteer for the Greater Niagara Council, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff T.T.

70.     To the extent that the Greater Niagara Council was a different entity, corporation, or organization during the period of time in which Moll used his position as a Boy Scout leader to sexually abuse plaintiff T.T., such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

71.     To the extent the Greater Niagara Council is a successor to a different entity, corporation, or organization which existed during the period of time during which Moll used his position as a Boy Scout leader to sexually abuse plaintiff T.T., such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

72.     All such Greater Niagara Council-related entities, corporations, or organizations are collectively referred to herein as the "Greater Niagara Council."

73.     Upon information and belief, at all relevant times the BSA and the Greater Niagara Council owned and operated Camp Scouthaven Boy Scout Camp, among other properties in and around Buffalo, New York, and they hired, supervised, and retained the staff, leaders, and volunteers who operated, coordinated, and supervised the camps.

74.     Upon information and belief, the BSA and the Greater Niagara Council used the camp to promote and benefit their Scouting program, including during the times that plaintiff T.T. attended the camp and was sexually abused at the camp, and both defendants generated revenue from the camp operations, including fees paid by T.T. and his family so he could attend the camp and participate in its activities.

75.     Plaintiff M.J.D. is an adult male who currently resides in Hamlin, New York.

76.     While he was a minor, plaintiff M.J.D. was a victim of one or more criminal sex acts in the State of New York. Since such criminal violation is the basis for this action, plaintiff

12

M.J.D. is entitled to the protection of Civil Rights Law 50-b and will file a motion asking this Court for permission to proceed using a pseudonym.

77.    In the alternative, plaintiff M.J.D. will seek a stipulation from the defendants agreeing to enter into a protective order which will ensure that his identity is protected from the public while allowing the defendants full access to information necessary for their defense.

78.    Upon information and belief, Scoutmaster Norman Grimm ("Grimm") was a Boy Scout leader or volunteer that the BSA used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff M.J.D.'s Boy Scout Troop.

79.    During the time that Grimm served as a Boy Scout leader or volunteer for the BSA, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff M.J.D.

80.    To the extent that the BSA was a different entity, corporation, or organization during the period of time in which Grimm used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff M.J.D., such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

81.    To the extent the BSA is a successor to a different entity, corporation, or organization which existed during the period of time during which Grimm used his position as a Boy Scout leader or volunteer to sexually abuse plaintiff M.J.D., such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

82.    All such BSA-related entities, corporations, or organizations are collectively referred to herein as the "BSA."

83.    Upon information and belief, at all relevant times the Greater Niagara Council was a local council of the BSA that acted as an agent of the BSA as to the Boy Scout Troops, Cub

13

Scout Troops, and other Troops under its jurisdiction within the BSA, including the Boy Scout Troop of plaintiff M.J.D. when he was sexually abused by Scoutmaster Norman Grimm.

84.     Upon information and belief, Scoutmaster Norman Grimm was a Boy Scout leader or volunteer that the Greater Niagara Council used and relied upon as a Scout leader or volunteer to serve the Boy Scouts in plaintiff M.J.D.'s Boy Scout Troop.

85.     During the time that Grimm served as a Boy Scout leader or volunteer for the Greater Niagara Council, he used his position as a Boy Scout leader or volunteer to groom and to sexually abuse plaintiff M.J.D.

86.     To the extent that the Greater Niagara Council was a different entity, corporation, or organization during the period of time in which Grimm used his position as a Boy Scout leader to sexually abuse plaintiff M.J.D., such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

87.     To the extent the Greater Niagara Council is a successor to a different entity, corporation, or organization which existed during the period of time during which Grimm used his position as a Boy Scout leader to sexually abuse plaintiff M.J.D., such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit.

88.     All such Greater Niagara Council-related entities, corporations, or organizations are collectively referred to herein as the "Greater Niagara Council."

## IV.     VENUE

89.     Venue is proper because the Greater Niagara Council is a domestic corporation authorized to transact business in New York with its principal office located in Buffalo, New York.

90.     Venue is proper because Erie is the county in which a substantial part of the events or omissions giving rise to each plaintiff's claim occurred.

14

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 17 of 78

91.     Venue is proper because plaintiff Robert O'Donnell currently resides in Boston, New York.

92.     Venue is proper because plaintiff T.T. currently resides in North Tonawanda, New York.

93.     Venue is proper because plaintiff M.J.D. currently resides in Hamlin, New York.

## V.     STATEMENT OF FACTS AS TO PLAINTIFF MICHAEL SCHALL

94.     Plaintiff Michael Schall repeats and re-alleges the allegations regarding the BSA and the Greater Niagara Council from the "Introduction" and the "Parties" sections, above, including the fact that the BSA knew for decades that Scout leaders and volunteers were using their positions to groom and to sexually abuse children throughout New York.

95.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, including the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area that the BSA assigned to the Greater Niagara Council.

96.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, and held out to the public its agents, servants, and employees as those who managed, maintained, operated, and controlled the Greater Niagara Council.

97.     Upon information and belief, at all relevant times the BSA was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff Michael Schall and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

98.     Upon information and belief, at all relevant times the BSA was responsible for and did the recruitment and staffing of volunteers for the Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff Michael Schall and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

99.     Upon information and belief, at all relevant times the BSA controlled the policies and procedures of the Greater Niagara Council, including any policies and procedures regarding the danger of Scouts being sexually abused by Scout leaders or volunteers and how to protect children from that danger.

100.     Upon information and belief, at all relevant times the BSA held itself out to the public as the owner of the Greater Niagara Council.

101.     Upon information and belief, at all relevant times the BSA materially benefited from the operation of the Greater Niagara Council, including the services of Scoutmaster Robert Eberhardt and the services of those who managed and supervised Eberhardt.

102.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt, including its leaders and volunteers.

103.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt, including its policies and procedures requiring the sexual abuse of children.

104.     Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout

16

Troops, Cub Scout Troops, and other Troops in the geographic area of New York that it was assigned by the BSA, including the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt.

105.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt, and held out to the public its agents, servants, and employees as those who managed it, maintained it, operated it, and controlled it.

106.    Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt.

107.    Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the recruitment and staffing of volunteers for the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt.

108.    Upon information and belief, at all relevant times the Greater Niagara Council held itself out to the public as the owner of the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt.

109.    Upon information and belief, at all relevant times the Greater Niagara Council materially benefited from the operation of the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt, including the services of Eberhardt and the services of those who managed and supervised Eberhardt.

17

110.     Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt, including its leaders and volunteers.

111.     Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Michael Schall belonged to when he was sexually abused by Scoutmaster Robert Eberhardt, including its policies and procedures requiring the sexual abuse of children.

112.     Upon information and belief, at all relevant times Eberhardt was a Scoutmaster of the BSA.

113.     Upon information and belief, at all relevant times Eberhardt was on the staff of, acted as an agent of, or served as an employee or volunteer of the BSA.

114.     Upon information and belief, at all relevant times Eberhardt was acting in the course and scope of his position with the BSA.

115.     Upon information and belief, at all relevant times Eberhardt was a Scoutmaster of the Greater Niagara Council.

116.     Upon information and belief, at all relevant times Eberhardt was on the staff of, was an agent of, or served as an employee or volunteer of the Greater Niagara Council.

117.     Upon information and belief, at all relevant times Eberhardt was acting in the course and scope of his position with the Greater Niagara Council.

118.     When plaintiff Michael Schall was a minor, he registered with the BSA and the Greater Niagara Council and paid them a fee to participate as a member of one of their Boy Scout Troops.

119.    At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Eberhardt out to the public, to Michael, and to his parents, as their agent.

120.    At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Eberhardt out to the public, to Michael, and to his parents, as having been vetted, screened, and approved by those defendants.

121.    At all relevant times, Michael and his parents reasonably relied upon the acts and representations of the BSA and the Greater Niagara Council, their agents, servants, and employees, and reasonably believed that Eberhardt was an agent of those defendants who was vetted, screened, and approved by those defendants.

122.    At all relevant times, Michael and his parents trusted Eberhardt because the BSA and the Greater Niagara Council held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Michael.

123.    At all relevant times, Michael and his parents believed that the BSA and the Greater Niagara Council would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of Michael.

124.    When Michael was a minor, Scoutmaster Robert Eberhardt sexually abused him when Eberhardt was his Scoutmaster.

125.    Michael was sexually abused by Eberhardt when Michael was approximately 11 to 14 years old.

126.    Based on the representations of the BSA and the Greater Niagara Council that Eberhardt was safe and trustworthy, Michael and his parents allowed Michael to be under the

19

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 22 of 78

supervision of, and in the care, custody, and control of, the BSA and the Greater Niagara Council, including during the times when Michael was sexually abused by Eberhardt.

127.     Based on the representations of the BSA and the Greater Niagara Council that Eberhardt was safe and trustworthy, Michael and his parents allowed Michael to be under the supervision of, and in the care, custody, and control of, Eberhardt, including during the times when Michael was sexually abused by Eberhardt.

128.     Neither Michael nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Eberhardt if the BSA or the Greater Niagara Council had disclosed to Michael or his parents that Eberhardt was not safe and was not trustworthy, and that he in fact posed a danger to Michael in that Eberhardt was likely to sexually abuse Michael.

129.     Neither Michael nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to Michael or his parents that Eberhardt was not safe and was not trustworthy, and that he in fact posed a danger to Michael in that Eberhardt was likely to sexually abuse Michael.

130.     Neither Michael nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to Michael or his parents that the BSA knew for decades that hundreds or thousands of sexual predators, like Eberhardt, were using their position as a Scout leader or volunteer to groom and to sexually abuse children.

131.     No parent of ordinary prudence in comparable circumstances would have allowed Michael to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater

20

Case 1:20-cv-00226-FPG Document 1-2 Filed 02/18/20 Page 23 of 78

Niagara Council, or Eberhardt if the BSA or the Greater Niagara Council had disclosed to Michael or his parents that Eberhardt was not safe and was not trustworthy, and that he in fact posed a danger to Michael in that Eberhardt was likely to sexually abuse him.

132. From approximately 1967 through 1970, Eberhardt exploited the trust and authority vested in him by the BSA and the Greater Niagara Council by grooming Michael to gain his trust and to obtain control over him as part of Eberhardt's plan to sexually molest and abuse Michael and other children, including those who participated in the Scouting program offered by the BSA and the Greater Niagara Council.

133. Eberhardt used his position of trust and authority as a Scoutmaster of the BSA and of the Greater Niagara Council to groom Michael and to sexually abuse him multiple times, including when Michael was under the supervision of, and in the care, custody, or control of, the BSA, the Greater Niagara Council, and Eberhardt.

134. At certain times, Eberhardt's sexual abuse of Michael occurred during Scouting activities that were sponsored by, or were a direct result of Scouting activities sponsored by, the BSA and the Greater Niagara Council, including Troop merit badge projects and Scout camping trips.

135. Upon information and belief, prior to the times mentioned herein, Eberhardt was a known sexual abuser of children.

136. Upon information and belief, at all relevant times defendants, their agents, servants, and employees, knew or should have known that Eberhardt was a known sexual abuser of children.

137. Upon information and belief, at all relevant times it was reasonably foreseeable to defendants, their agents, servants, and employees that Eberhardt's sexual abuse of children would

21

likely result in injury to others, including the sexual abuse of Michael and other children by Eberhardt.

138.    Upon information and belief, at certain times between 1967 and 1970, defendants, their agents, servants, and employees knew or should have known that Eberhardt was sexually abusing Michael and other Scouts.

139.    Upon information and belief, defendants, their agents, servants, and employees knew or should have known that the sexual abuse by Eberhardt of Michael was ongoing.

140.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Eberhardt's sexual abuse of Michael that Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council had used their positions with those defendants to groom and to sexually abuse children.

141.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Eberhardt's sexual abuse of Michael that such Scout leaders, volunteers, and other persons could not be "cured" through treatment or counseling.

142.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Eberhardt in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that Eberhardt and other abusers in their ranks would continue to molest children.

Case 1:20-cv-00220-FPG Document 1-2 Filed 02/18/20 Page 25 of 78

143.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Eberhardt would use his position with the defendants to sexually abuse children, including Michael.

144.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, disregarded their knowledge that Eberhardt would use his position with them to sexually abuse children, including Michael.

145.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, acted in concert with each other or with Eberhardt to conceal the danger that Eberhardt posed to children, including Michael, so that Eberhardt could continue serving them despite their knowledge of that danger.

146.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Michael, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

147.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that those Scout leaders, volunteers, and other persons would continue to molest children.

23

Case 1:20-cv-00220-FPG Document 1-2 Filed 02/18/20 Page 26 of 78

148. By reason of the wrongful acts of the BSA and the Greater Niagara Council as detailed herein, Michael sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and Michael has and/or will become obligated to expend sums of money for treatment.

## VI.  STATEMENT OF FACTS AS TO PLAINTIFF DANIEL TRAINA

149. Plaintiff Daniel Traina repeats and re-alleges the allegations regarding the BSA and the Greater Niagara Council from the "Introduction" and the "Parties" sections, above, including the fact that the BSA knew for decades that Scout leaders and volunteers were using their positions to groom and to sexually abuse children throughout New York.

150. Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, including the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area that the BSA assigned to the Greater Niagara Council.

151. Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, and held out to the public its agents, servants, and employees as those who managed, maintained, operated, and controlled the Greater Niagara Council.

152. Upon information and belief, at all relevant times the BSA was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff

24

Case 1:20-cv-00226-FPG   Document 1-2   Filed 02/18/20   Page 27 of 78

Daniel Traina and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

153.    Upon information and belief, at all relevant times the BSA was responsible for and did the recruitment and staffing of volunteers for the Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff Daniel Traina and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

154.    Upon information and belief, at all relevant times the BSA controlled the policies and procedures of the Greater Niagara Council, including any policies and procedures regarding the danger of Scouts being sexually abused by Scout leaders or volunteers and how to protect children from that danger.

155.    Upon information and belief, at all relevant times the BSA held itself out to the public as the owner of the Greater Niagara Council.

156.    Upon information and belief, at all relevant times the BSA materially benefited from the operation of the Greater Niagara Council, including the services of Assistant Scoutmaster Robert Moll, Jr., and the services of those who managed and supervised Moll.

157.    Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including its leaders and volunteers.

158.    Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including its policies and procedures requiring the sexual abuse of children.

25

159.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area of New York that it was assigned by the BSA, including the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

160.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., and held out to the public its agents, servants, and employees as those who managed it, maintained it, operated it, and controlled it.

161.    Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

162.    Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the recruitment and staffing of volunteers for the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

163.    Upon information and belief, at all relevant times the Greater Niagara Council held itself out to the public as the owner of the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

164.    Upon information and belief, at all relevant times the Greater Niagara Council materially benefited from the operation of the Boy Scout Troop that plaintiff Daniel Traina

26

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 29 of 78

belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including the services of Assistant Scoutmaster Robert Moll, Jr. and the services of those who managed and supervised Moll.

165.   Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including its leaders and volunteers.

166.   Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Daniel Traina belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including its policies and procedures requiring the sexual abuse of children.

167.   Upon information and belief, at all relevant times Moll was an Assistant Scoutmaster of the BSA.

168.   Upon information and belief, at all relevant times Moll was on the staff of, acted as an agent of, or served as an employee or volunteer of the BSA.

169.   Upon information and belief, at all relevant times Moll was acting in the course and scope of his position with the BSA.

170.   Upon information and belief, at all relevant times Moll was an Assistant Scoutmaster of the Greater Niagara Council.

171.   Upon information and belief, at all relevant times Moll was on the staff of, was an agent of, or served as an employee or volunteer of the Greater Niagara Council.

27

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 30 of 78

172.    Upon information and belief, at all relevant times Moll was acting in the course and scope of his position with the Greater Niagara Council.

173.    When plaintiff Daniel Traina was a minor, he registered with the BSA and the Greater Niagara Council and paid them a fee to participate as a member of one of their Boy Scout Troops and to go on their camping trips, including camping trips at Schoellkopf Scout Reservation and other properties near Bonds Lake in and around Buffalo, New York.

174.    At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Moll out to the public, to Daniel, and to his parents, as their agent.

175.    At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Moll out to the public, to Daniel, and to his parents, as having been vetted, screened, and approved by those defendants.

176.    At all relevant times, Daniel and his parents reasonably relied upon the acts and representations of the BSA and the Greater Niagara Council, their agents, servants, and employees, and reasonably believed that Moll was an agent of those defendants who was vetted, screened, and approved by those defendants.

177.    At all relevant times, Daniel and his parents trusted Moll because the BSA and the Greater Niagara Council held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Daniel.

178.    At all relevant times, Daniel and his parents believed that the BSA and the Greater Niagara Council would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of Daniel.

179.    When Daniel was a minor, Assistant Scoutmaster Robert Moll, Jr., sexually abused him when Moll was his Assistant Scoutmaster.

Case 1:20-cv-00226-FPG   Document 1-2   Filed 02/18/20   Page 31 of 78

180.     Daniel was sexually abused by Moll when Daniel was approximately 12 to 13 years old.

181.     Based on the representations of the BSA and the Greater Niagara Council that Moll was safe and trustworthy, Daniel and his parents allowed Daniel to be under the supervision of, and in the care, custody, and control of, the BSA and the Greater Niagara Council, including during the times when Daniel was sexually abused by Moll.

182.     Based on the representations of the BSA and the Greater Niagara Council that Moll was safe and trustworthy, Daniel and his parents allowed Daniel to be under the supervision of, and in the care, custody, and control of, Moll, including during the times when Daniel was sexually abused by Moll.

183.     Neither Daniel nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Moll if the BSA or the Greater Niagara Council had disclosed to Daniel or his parents that Moll was not safe and was not trustworthy, and that he in fact posed a danger to Daniel in that Moll was likely to sexually abuse Daniel.

184.     Neither Daniel nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to Daniel or his parents that Moll was not safe and was not trustworthy, and that he in fact posed a danger to Daniel in that Moll was likely to sexually abuse Daniel.

185.     Neither Daniel nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to Daniel or his parents that the BSA knew for decades that hundreds or

29

thousands of sexual predators, like Moll, were using their position as a Scout leader or volunteer to groom and to sexually abuse children.

186.    No parent of ordinary prudence in comparable circumstances would have allowed Daniel to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Moll if the BSA or the Greater Niagara Council had disclosed to Daniel or his parents that Moll was not safe and was not trustworthy, and that he in fact posed a danger to Daniel in that Moll was likely to sexually abuse him.

187.    From approximately 1973 through 1976, Moll exploited the trust and authority vested in him by the BSA and the Greater Niagara Council by grooming Daniel to gain his trust and to obtain control over him as part of Moll's plan to sexually molest and abuse Daniel and other children, including those who participated in the Scouting program offered by the BSA and the Greater Niagara Council.

188.    Moll used his position of trust and authority as an Assistant Scoutmaster of the BSA and of the Greater Niagara Council to groom Daniel and to sexually abuse him multiple times, including when Daniel was under the supervision of, and in the care, custody, or control of, the BSA, the Greater Niagara Council, and Moll.

189.    At certain times, Moll's sexual abuse of Daniel occurred during Scouting activities that were sponsored by, or were a direct result of Scouting activities sponsored by, the BSA and the Greater Niagara Council, including during Scout camping trips at Schoellkopf Scout Reservation and other properties near Bonds Lake in and around Buffalo, New York.

190.    Upon information and belief, prior to the times mentioned herein, Moll was a known sexual abuser of children.

Case 1:20-cv-00226-FPG Document 1-2 Filed 02/18/20 Page 33 of 78

191.    Upon information and belief, at all relevant times, defendants, their agents, servants, and employees, knew or should have known that Moll was a known sexual abuser of children.

192.    Upon information and belief, at all relevant times, it was reasonably foreseeable to defendants, their agents, servants, and employees that Moll's sexual abuse of children would likely result in injury to others, including the sexual abuse of Daniel and other children by Moll.

193.    Upon information and belief, at certain times between 1973 and 1976, defendants, their agents, servants, and employees knew or should have known that Moll was sexually abusing Daniel and other Scouts.

194.    Upon information and belief, defendants, their agents, servants, and employees knew or should have known that the sexual abuse by Moll of Daniel was ongoing.

195.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Moll's sexual abuse of Daniel that Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council had used their positions with those defendants to groom and to sexually abuse children.

196.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Moll's sexual abuse of Daniel that such Scout leaders, volunteers, and other persons could not be "cured" through treatment or counseling.

197.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Moll in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent

Case 1:20-cv-00220-FPG Document 1-2 Filed 02/18/20 Page 34 of 78

victims of such sexual abuse by him and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that Moll and other abusers in their ranks would continue to molest children.

198. Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Moll would use his position with the defendants to sexually abuse children, including Daniel.

199. Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, disregarded their knowledge that Moll would use his position with them to sexually abuse children, including Daniel.

200. Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, acted in concert with each other or with Moll to conceal the danger that Moll posed to children, including Daniel, so that Moll could continue serving them despite their knowledge of that danger.

201. Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Daniel, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

202. Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute

of limitations prior to the enactment of the CVA, despite knowing that those Scout leaders, volunteers, and other persons would continue to molest children.

203.     By reason of the wrongful acts of the BSA and the Greater Niagara Council as detailed herein, Daniel sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and Daniel has and/or will become obligated to expend sums of money for treatment.

## VII.     STATEMENT OF FACTS AS TO PLAINTIFF ROBERT O'DONNELL

204.     Plaintiff Robert O'Donnell repeats and re-alleges the allegations regarding the BSA and the Greater Niagara Council from the "Introduction" and the "Parties" sections, above, including the fact that the BSA knew for decades that Scout leaders and volunteers were using their positions to groom and to sexually abuse children throughout New York.

205.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, including the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area that the BSA assigned to the Greater Niagara Council.

206.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, and held out to the public its agents, servants, and employees as those who managed, maintained, operated, and controlled the Greater Niagara Council.

207.     Upon information and belief, at all relevant times the BSA was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the

Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff Robert O'Donnell and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

208.     Upon information and belief, at all relevant times the BSA was responsible for and did the recruitment and staffing of volunteers for the Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff Robert O'Donnell and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

209.     Upon information and belief, at all relevant times the BSA controlled the policies and procedures of the Greater Niagara Council, including any policies and procedures regarding the danger of Scouts being sexually abused by Scout leaders or volunteers and how to protect children from that danger.

210.     Upon information and belief, at all relevant times the BSA held itself out to the public as the owner of the Greater Niagara Council.

211.     Upon information and belief, at all relevant times the BSA materially benefited from the operation of the Greater Niagara Council, including the services of Scoutmaster Ronald Williams and the services of those who managed and supervised Williams.

212.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams, including its leaders and volunteers.

213.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff

34

Case 1:20-cv-00220-FPG Document 1-2 Filed 02/18/20 Page 37 of 78

Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams, including its policies and procedures requiring the sexual abuse of children.

214. Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area of New York that it was assigned by the BSA, including the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams.

215. Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams, and held out to the public its agents, servants, and employees as those who managed it, maintained it, operated it, and controlled it.

216. Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams.

217. Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the recruitment and staffing of volunteers for the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams.

218. Upon information and belief, at all relevant times the Greater Niagara Council held itself out to the public as the owner of the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams.

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 38 of 78

219.    Upon information and belief, at all relevant times the Greater Niagara Council materially benefited from the operation of the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams, including the services of Scoutmaster Ronald Williams and the services of those who managed and supervised Williams.

220.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams, including its leaders and volunteers.

221.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff Robert O'Donnell belonged to when he was sexually abused by Scoutmaster Ronald Williams, including its policies and procedures requiring the sexual abuse of children.

222.    Upon information and belief, at all relevant times Williams was a Scoutmaster of the BSA.

223.    Upon information and belief, at all relevant times Williams was on the staff of, acted as an agent of, or served as an employee or volunteer of the BSA.

224.    Upon information and belief, at all relevant times Williams was acting in the course and scope of his position with the BSA.

225.    Upon information and belief, at all relevant times Williams was a Scoutmaster of the Greater Niagara Council.

226.    Upon information and belief, at all relevant times Williams was on the staff of, was an agent of, or served as an employee or volunteer of the Greater Niagara Council.

36

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 39 of 78

227.    Upon information and belief, at all relevant times Williams was acting in the course and scope of his position with the Greater Niagara Council.

228.    When plaintiff Robert O'Donnell was a minor, he registered with the BSA and the Greater Niagara Council and paid them a fee to participate as a member of one of their Boy Scout Troops.

229.    At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Williams out to the public, to Robert, and to his parents, as their agent.

230.    At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Williams out to the public, to Robert, and to his parents, as having been vetted, screened, and approved by those defendants.

231.    At all relevant times, Robert and his parents reasonably relied upon the acts and representations of the BSA and the Greater Niagara Council, their agents, servants, and employees, and reasonably believed that Williams was an agent of those defendants who was vetted, screened, and approved by those defendants.

232.    At all relevant times, Robert and his parents trusted Williams because the BSA and the Greater Niagara Council held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of Robert.

233.    At all relevant times, Robert and his parents believed that the BSA and the Greater Niagara Council would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of Robert.

234.    When Robert was a minor, Scoutmaster Ronald Williams sexually abused him when Williams was his Scoutmaster.

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 40 of 78

235.    Robert was sexually abused by Williams when Robert was approximately 13 to 14 years old.

236.    Based on the representations of the BSA and the Greater Niagara Council that Williams was safe and trustworthy, Robert and his parents allowed Robert to be under the supervision of, and in the care, custody, and control of, the BSA and the Greater Niagara Council, including during the times when Robert was sexually abused by Williams.

237.    Based on the representations of the BSA and the Greater Niagara Council that Williams was safe and trustworthy, Robert and his parents allowed Robert to be under the supervision of, and in the care, custody, and control of, Williams, including during the times when Robert was sexually abused by Williams.

238.    Neither Robert nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Williams if the BSA or the Greater Niagara Council had disclosed to Robert or his parents that Williams was not safe and was not trustworthy, and that he in fact posed a danger to Robert in that Williams was likely to sexually abuse Robert.

239.    Neither Robert nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to Robert or his parents that Williams was not safe and was not trustworthy, and that he in fact posed a danger to Robert in that Williams was likely to sexually abuse Robert.

240.    Neither Robert nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to Robert or his parents that the BSA knew for decades that hundreds or

thousands of sexual predators, like Williams, were using their position as a Scout leader or volunteer to groom and to sexually abuse children.

241. No parent of ordinary prudence in comparable circumstances would have allowed Robert to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Williams if the BSA or the Greater Niagara Council had disclosed to Robert or his parents that Williams was not safe and was not trustworthy, and that he in fact posed a danger to Robert in that Williams was likely to sexually abuse him.

242. From approximately 1977 through 1978, Williams exploited the trust and authority vested in him by the BSA and the Greater Niagara Council by grooming Robert to gain his trust and to obtain control over him as part of Williams's plan to sexually molest and abuse Robert and other children, including those who participated in the Scouting program offered by the BSA and the Greater Niagara Council.

243. Williams used his position of trust and authority as a Scoutmaster of the BSA and of the Greater Niagara Council to groom Robert and to sexually abuse him multiple times, including when Robert was under the supervision of, and in the care, custody, or control of, the BSA, the Greater Niagara Council, and Williams.

244. At certain times, Williams's sexual abuse of Robert occurred during Scouting activities that were sponsored by, or were a direct result of Scouting activities sponsored by, the BSA and the Greater Niagara Council, including Scout camping trips, Troop merit badge projects, and Troop meetings.

245. Upon information and belief, prior to the times mentioned herein, Williams was a known sexual abuser of children.

246.    Upon information and belief, at all relevant times, defendants, their agents, servants, and employees, knew or should have known that Williams was a known sexual abuser of children.

247.    Upon information and belief, at all relevant times, it was reasonably foreseeable to defendants, their agents, servants, and employees that Williams's sexual abuse of children would likely result in injury to others, including the sexual abuse of Robert and other children by Williams.

248.    Upon information and belief, at certain times between 1977 and 1978, defendants, their agents, servants, and employees knew or should have known that Williams was sexually abusing Robert and other Scouts.

249.    Upon information and belief, defendants, their agents, servants, and employees knew or should have known that the sexual abuse by Williams of Robert was ongoing.

250.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Williams's sexual abuse of Robert that Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council had used their positions with those defendants to groom and to sexually abuse children.

251.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Williams's sexual abuse of Robert that such Scout leaders, volunteers, and other persons could not be "cured" through treatment or counseling.

252.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Williams in order to

40

conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that Williams and other abusers in their ranks would continue to molest children.

253.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Williams would use his position with the defendants to sexually abuse children, including Robert.

254.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, disregarded their knowledge that Williams would use his position with them to sexually abuse children, including Robert.

255.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, acted in concert with each other or with Williams to conceal the danger that Williams posed to children, including Robert, so that Williams could continue serving them despite their knowledge of that danger.

256.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including Robert, and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

257.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and

to prevent victims of such sexual abuse from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that those Scout leaders, volunteers, and other persons would continue to molest children.

258.    By reason of the wrongful acts of the BSA and the Greater Niagara Council as detailed herein, Robert sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and Robert has and/or will become obligated to expend sums of money for treatment.

## VIII.   STATEMENT OF FACTS AS TO PLAINTIFF T.T.

259.    Plaintiff T.T. repeats and re-alleges the allegations regarding the BSA and the Greater Niagara Council from the "Introduction" and the "Parties" sections, above, including the fact that the BSA knew for decades that Scout leaders and volunteers were using their positions to groom and to sexually abuse children throughout New York.

260.    Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, including the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area that the BSA assigned to the Greater Niagara Council.

261.    Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, and held out to the public its agents, servants, and employees as those who managed, maintained, operated, and controlled the Greater Niagara Council.

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 45 of 78

262.     Upon information and belief, at all relevant times the BSA was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff T.T. and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

263.     Upon information and belief, at all relevant times the BSA was responsible for and did the recruitment and staffing of volunteers for the Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff T.T. and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

264.     Upon information and belief, at all relevant times the BSA controlled the policies and procedures of the Greater Niagara Council, including any policies and procedures regarding the danger of Scouts being sexually abused by Scout leaders or volunteers and how to protect children from that danger.

265.     Upon information and belief, at all relevant times the BSA held itself out to the public as the owner of the Greater Niagara Council.

266.     Upon information and belief, at all relevant times the BSA materially benefited from the operation of the Greater Niagara Council, including the services of Assistant Scoutmaster Robert Moll, Jr. and the services of those who managed and supervised Moll.

267.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including its leaders and volunteers.

268.    Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including its policies and procedures requiring the sexual abuse of children.

269.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area of New York that it was assigned by the BSA, including the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

270.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., and held out to the public its agents, servants, and employees as those who managed it, maintained it, operated it, and controlled it.

271.    Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

272.    Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the recruitment and staffing of volunteers for the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

273.     Upon information and belief, at all relevant times the Greater Niagara Council held itself out to the public as the owner of the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr.

274.     Upon information and belief, at all relevant times the Greater Niagara Council materially benefited from the operation of the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including the services of Assistant Scoutmaster Robert Moll, Jr., and the services of those who managed and supervised Moll.

275.     Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including its leaders and volunteers.

276.     Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff T.T. belonged to when he was sexually abused by Assistant Scoutmaster Robert Moll, Jr., including its policies and procedures requiring the sexual abuse of children.

277.     Upon information and belief, at all relevant times Moll was an Assistant Scoutmaster of the BSA.

278.     Upon information and belief, at all relevant times Moll was on the staff of, acted as an agent of, or served as an employee or volunteer of the BSA.

279.     Upon information and belief, at all relevant times Moll was acting in the course and scope of his position with the BSA.

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 48 of 78

280.     Upon information and belief, at all relevant times Moll was an Assistant Scoutmaster of the Greater Niagara Council.

281.     Upon information and belief, at all relevant times Moll was on the staff of, was an agent of, or served as an employee or volunteer of the Greater Niagara Council.

282.     Upon information and belief, at all relevant times Moll was acting in the course and scope of his position with the Greater Niagara Council.

283.     When plaintiff T.T. was a minor, he registered with the BSA and the Greater Niagara Council and paid them a fee to participate as a member of one of their Boy Scout Troops and to go on their camping trips.

284.     At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Moll out to the public, to T.T., and to his parents, as their agent.

285.     At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Moll out to the public, to T.T., and to his parents, as having been vetted, screened, and approved by those defendants.

286.     At all relevant times, T.T. and his parents reasonably relied upon the acts and representations of the BSA and the Greater Niagara Council, their agents, servants, and employees, and reasonably believed that Moll was an agent of those defendants who was vetted, screened, and approved by those defendants.

287.     At all relevant times, T.T. and his parents trusted Moll because the BSA and the Greater Niagara Council held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of T.T.

INDEX NO. 810199/2019
Case 1:20-cv-00220-FPG Document 1-2 Filed 02/18/20 Page 49 of 78
RECEIVED NYSCEF: 08/14/2019

288.	At all relevant times, T.T. and his parents believed that the BSA and the Greater Niagara Council would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of T.T.

289.	When T.T. was a minor, Assistant Scoutmaster Robert Moll, Jr., sexually abused him when Moll was his Assistant Scoutmaster.

290.	T.T. was sexually abused by Moll when T.T. was approximately 13 to 14 years old.

291.	Based on the representations of the BSA and the Greater Niagara Council that Moll was safe and trustworthy, T.T. and his parents allowed T.T. to be under the supervision of, and in the care, custody, and control of, the BSA and the Greater Niagara Council, including during the times when T.T. was sexually abused by Moll.

292.	Based on the representations of the BSA and the Greater Niagara Council that Moll was safe and trustworthy, T.T. and his parents allowed T.T. to be under the supervision of, and in the care, custody, and control of, Moll, including during the times when T.T. was sexually abused by Moll.

293.	Neither T.T. nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Moll if the BSA or the Greater Niagara Council had disclosed to T.T. or his parents that Moll was not safe and was not trustworthy, and that he in fact posed a danger to T.T. in that Moll was likely to sexually abuse T.T.

294.	Neither T.T. nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to T.T. or his parents that Moll was not safe and was not trustworthy, and that he in fact posed a danger to T.T. in that Moll was likely to sexually abuse T.T.

Case 1:20-cv-00226-FPG   Document 1-2   Filed 02/18/20   Page 50 of 78

295.    Neither T.T. nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to T.T. or his parents that the BSA knew for decades that hundreds or thousands of sexual predators, like Moll, were using their position as a Scout leader or volunteer to groom and to sexually abuse children.

296.    No parent of ordinary prudence in comparable circumstances would have allowed T.T. to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Moll if the BSA or the Greater Niagara Council had disclosed to T.T. or his parents that Moll was not safe and was not trustworthy, and that he in fact posed a danger to T.T. in that Moll was likely to sexually abuse him.

297.    In approximately 1974, Moll exploited the trust and authority vested in him by the BSA and the Greater Niagara Council by grooming T.T. to gain his trust and to obtain control over him as part of Moll's plan to sexually molest and abuse T.T. and other children, including those who participated in the Scouting program offered by the BSA and the Greater Niagara Council.

298.    Moll used his position of trust and authority as an Assistant Scoutmaster of the BSA and of the Greater Niagara Council to groom T.T. and to sexually abuse him multiple times, including when T.T. was under the supervision of, and in the care, custody, or control of, the BSA, the Greater Niagara Council, and Moll.

299.    At certain times, Moll's sexual abuse of T.T. occurred during Scouting activities that were sponsored by, or were a direct result of Scouting activities sponsored by, the BSA and the Greater Niagara Council, including Scout camping trips on properties owned by the defendants in and around Buffalo, New York, such as Camp Scouthaven.

48

300.   Upon information and belief, prior to the times mentioned herein, Moll was a known sexual abuser of children.

301.   Upon information, at all relevant times defendants, their agents, servants, and employees, knew or should have known that Moll was a known sexual abuser of children.

302.   Upon information and belief, at all relevant times it was reasonably foreseeable to defendants, their agents, servants, and employees that Moll's sexual abuse of children would likely result in injury to others, including the sexual abuse of T.T. and other children by Moll.

303.   Upon information and belief, the defendants, their agents, servants, and employees, knew or should have known that Moll was sexually abusing T.T. and other Scouts.

304.   Upon information and belief, defendants, their agents, servants, and employees knew or should have known that the sexual abuse by Moll of T.T. was ongoing.

305.   Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Moll's sexual abuse of T.T. that Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council had used their positions with those defendants to groom and to sexually abuse children.

306.   Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Moll's sexual abuse of T.T. that such Scout leaders, volunteers, and other persons could not be "cured" through treatment or counseling.

307.   Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Moll in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent

victims of such sexual abuse by him and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that Moll and other abusers in their ranks would continue to molest children.

308.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Moll would use his position with the defendants to sexually abuse children, including T.T.

309.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, disregarded their knowledge that Moll would use his position with them to sexually abuse children, including T.T.

310.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, acted in concert with each other or with Moll to conceal the danger that Moll posed to children, including T.T., so that Moll could continue serving them despite their knowledge of that danger.

311.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including T.T., and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

312.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute

50

of limitations prior to the enactment of the CVA, despite knowing that those Scout leaders, volunteers, and other persons would continue to molest children.

313.    By reason of the wrongful acts of the BSA and the Greater Niagara Council as detailed herein, T.T. sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and T.T. has and/or will become obligated to expend sums of money for treatment.

## IX.    STATEMENT OF FACTS AS TO PLAINTIFF M.J.D.

314.    Plaintiff M.J.D. repeats and re-alleges the allegations regarding the BSA and the Greater Niagara Council from the "Introduction" and the "Parties" sections, above, including the fact that the BSA knew for decades that Scout leaders and volunteers were using their positions to groom and to sexually abuse children throughout New York.

315.    Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, including the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area that the BSA assigned to the Greater Niagara Council.

316.    Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Greater Niagara Council, and held out to the public its agents, servants, and employees as those who managed, maintained, operated, and controlled the Greater Niagara Council.

317.    Upon information and belief, at all relevant times the BSA was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the

Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff M.J.D. and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

318.     Upon information and belief, at all relevant times the BSA was responsible for and did the recruitment and staffing of volunteers for the Greater Niagara Council, including those positions that were responsible for ensuring that plaintiff M.J.D. and other children who participated in Scouting activities were protected from the danger of child sexual abuse.

319.     Upon information and belief, at all relevant times the BSA controlled the policies and procedures of the Greater Niagara Council, including any policies and procedures regarding the danger of Scouts being sexually abused by Scout leaders or volunteers and how to protect children from that danger..

320.     Upon information and belief, at all relevant times the BSA held itself out to the public as the owner of the Greater Niagara Council.

321.     Upon information and belief, at all relevant times the BSA materially benefited from the operation of the Greater Niagara Council, including the services of Scoutmaster Norman Grimm and the services of those who managed and supervised Grimm.

322.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm, including its leaders and volunteers.

323.     Upon information and belief, at all relevant times the BSA, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff

52

M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm, including its policies and procedures requiring the sexual abuse of children.

324. Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troops, Cub Scout Troops, and other Troops in the geographic area of New York that it was assigned by the BSA, including the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm.

325. Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm, and held out to the public its agents, servants, and employees as those who managed it, maintained it, operated it, and controlled it.

326. Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the hiring and staffing, and did the hiring and staffing, for many of the leadership positions of the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm.

327. Upon information and belief, at all relevant times the Greater Niagara Council was responsible for the recruitment and staffing of volunteers for the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm.

328. Upon information and belief, at all relevant times the Greater Niagara Council held itself out to the public as the owner of the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm.

Case 1:20-cv-00220-FPG Document 1-2 Filed 02/18/20 Page 56 of 78

329.    Upon information and belief, at all relevant times the Greater Niagara Council materially benefited from the operation of the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm, including the services of Scoutmaster Norman Grimm and the services of those who managed and supervised Grimm.

330.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm, including its leaders and volunteers.

331.    Upon information and belief, at all relevant times the Greater Niagara Council, its agents, servants, and employees managed, maintained, operated, and controlled the Boy Scout Troop that plaintiff M.J.D. belonged to when he was sexually abused by Scoutmaster Norman Grimm, including its policies and procedures requiring the sexual abuse of children.

332.    Upon information and belief, at all relevant times Grimm was a Scoutmasters of the BSA.

333.    Upon information and belief, at all relevant times Grimm was on the staff of, acted as an agent of, or served as an employee or volunteer of the BSA.

334.    Upon information and belief, at all relevant times Grimm was acting in the course and scope of his position with the BSA.

335.    Upon information and belief, at all relevant times Grimm was a Scoutmaster of the Greater Niagara Council.

336.    Upon information and belief, at all relevant times Grimm was on the staff of, was an agent of, or served as an employee or volunteer of the Greater Niagara Council.

54

337.    Upon information and belief, at all relevant times Grimm was acting in the course and scope of his position with the Greater Niagara Council.

338.    When plaintiff M.J.D. was a minor, he registered with the BSA and the Greater Niagara Council and paid them a fee to participate as a member of one of their Boy Scout Troops.

339.    At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Grimm out to the public, to M.J.D., and to his parents, as their agent.

340.    At all relevant times, the BSA and the Greater Niagara Council, their agents, servants, and employees, held Grimm out to the public, to M.J.D., and to his parents, as having been vetted, screened, and approved by those defendants.

341.    At all relevant times, M.J.D. and his parents reasonably relied upon the acts and representations of the BSA and the Greater Niagara Council, their agents, servants, and employees, and reasonably believed that Grimm was an agent of those defendants who was vetted, screened, and approved by those defendants.

342.    At all relevant times, M.J.D. and his parents trusted Grimm because the BSA and the Greater Niagara Council held him out as someone who was safe and could be trusted with the supervision, care, custody, and control of M.J.D.

343.    At all relevant times, M.J.D. and his parents believed that the BSA and the Greater Niagara Council would exercise such care as would a parent of ordinary prudence in comparable circumstances when those defendants assumed supervision, care, custody, and control of M.J.D.

344.    When M.J.D. was a minor, Scoutmaster Norman Grimm sexually abused him when Grimm was his Scoutmaster.

345.    M.J.D. was sexually abused by Grimm when M.J.D. was approximately 11 to 12 years old.

346.    Based on the representations of the BSA and the Greater Niagara Council that Grimm was safe and trustworthy, M.J.D. and his parents allowed M.J.D. to be under the supervision of, and in the care, custody, and control of, the BSA and the Greater Niagara Council, including during the times when M.J.D. was sexually abused by Grimm.

347.    Based on the representations of the BSA and the Greater Niagara Council that Grimm was safe and trustworthy, M.J.D. and his parents allowed M.J.D. to be under the supervision of, and in the care, custody, and control of, Grimm, including during the times when M.J.D. was sexually abused by Grimm.

348.    Neither M.J.D. nor his parents would have allowed him to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Grimm if the BSA or the Greater Niagara Council had disclosed to M.J.D. or his parents that Grimm was not safe and was not trustworthy, and that he in fact posed a danger to M.J.D. in that Grimm was likely to sexually abuse M.J.D.

349.    Neither M.J.D. nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to M.J.D. or his parents that Grimm was not safe and was not trustworthy, and that he in fact posed a danger to M.J.D. in that Grimm was likely to sexually abuse M.J.D.

350.    Neither M.J.D. nor his parents would have paid the BSA or the Greater Niagara Council to allow him to be a member of their Boy Scout Troop if the BSA or the Greater Niagara Council had disclosed to M.J.D. or his parents that the BSA knew for decades that hundreds or thousands of sexual predators, like Grimm, were using their position as a Scout leader or volunteer to groom and to sexually abuse children.

351. No parent of ordinary prudence in comparable circumstances would have allowed M.J.D. to be under the supervision of, or in the care, custody, or control of, the BSA, the Greater Niagara Council, or Grimm if the BSA or the Greater Niagara Council had disclosed to M.J.D. or his parents that Grimm was not safe and was not trustworthy, and that he in fact posed a danger to M.J.D. in that Grimm was likely to sexually abuse him.

352. From approximately 1974 through 1975, Grimm exploited the trust and authority vested in him by the BSA and the Greater Niagara Council by grooming M.J.D. to gain his trust and to obtain control over him as part of Grimm's plan to sexually molest and abuse M.J.D. and other children, including those who participated in the Scouting program offered by the BSA and the Greater Niagara Council.

353. Grimm used his position of trust and authority as a Scoutmaster of the BSA and of the Greater Niagara Council to groom M.J.D. and to sexually abuse him multiple times, including when M.J.D. was under the supervision of, and in the care, custody, or control of, the BSA, the Greater Niagara Council, and Grimm.

354. At certain times, Grimm's sexual abuse of M.J.D. occurred during Scouting activities that were sponsored by, or were a direct result of Scouting activities sponsored by, the BSA and the Greater Niagara Council, including during Scout camping trips and Troop merit badge projects.

355. Upon information and belief, prior to the times mentioned herein, Grimm was a known sexual abuser of children.

356. Upon information and belief, at all relevant times defendants, their agents, servants, and employees, knew or should have known that Grimm was a known sexual abuser of children.

357. Upon information and belief, at all relevant times it was reasonably foreseeable to defendants, their agents, servants, and employees that Grimm's sexual abuse of children would likely result in injury to others, including the sexual abuse of M.J.D. and other children by Grimm.

358. Upon information and belief, at certain times between 1974 and 1975, defendants, their agents, servants, and employees knew or should have known that Grimm was sexually abusing M.J.D. and other Scouts.

359. Upon information and belief, defendants, their agents, servants, and employees knew or should have known that the sexual abuse by Grimm of M.J.D. was ongoing.

360. Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Grimm's sexual abuse of M.J.D. that Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council had used their positions with those defendants to groom and to sexually abuse children.

361. Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew or should have known before and during Grimm's sexual abuse of M.J.D. that such Scout leaders, volunteers, and other persons could not be "cured" through treatment or counseling.

362. Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Grimm in order to conceal their own bad acts in failing to protect children from him, to protect their reputation, and to prevent victims of such sexual abuse by him and other Scout leaders and volunteers from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that Grimm and other abusers in their ranks would continue to molest children.

58

363.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, consciously and recklessly disregarded their knowledge that Grimm would use his position with the defendants to sexually abuse children, including M.J.D.

364.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, disregarded their knowledge that Grimm would use his position with them to sexually abuse children, including M.J.D.

365.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, acted in concert with each other or with Grimm to conceal the danger that Grimm posed to children, including M.J.D., so that Grimm could continue serving them despite their knowledge of that danger.

366.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, knew that their negligent, reckless, and outrageous conduct would inflict severe emotional and psychological distress, as well as personal physical injury, on others, including M.J.D., and he did in fact suffer severe emotional and psychological distress and personal physical injury as a result of their wrongful conduct.

367.    Upon information and belief, the BSA and the Greater Niagara Council, their agents, servants, and employees, concealed the sexual abuse of children by Scout leaders, volunteers, and other persons serving the BSA and the Greater Niagara Council in order to conceal their own bad acts in failing to protect children from being abused, to protect their reputation, and to prevent victims of such sexual abuse from coming forward during the extremely limited statute of limitations prior to the enactment of the CVA, despite knowing that those Scout leaders, volunteers, and other persons would continue to molest children.

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 62 of 78

368.    By reason of the wrongful acts of the BSA and the Greater Niagara Council as detailed herein, M.J.D. sustained physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage, and, upon information and belief, some or all of these injuries are of a permanent and lasting nature, and M.J.D. has and/or will become obligated to expend sums of money for treatment.

## X.    CAUSES OF ACTION AS TO PLAINTIFF MICHAEL SCHALL
### A.    FIRST CAUSE OF ACTION – NEGLIGENCE

369.    Plaintiff Michael Schall repeats and re-alleges all of his allegations above and below.

370.    The BSA and the Greater Niagara Council had a duty to take reasonable steps to protect plaintiff Michael Schall, a child, from foreseeable harm when he was under their supervision and in their care, custody, and control.

371.    The BSA and the Greater Niagara Council also had a duty to take reasonable steps to prevent Eberhardt from using the tasks, premises, and instrumentalities of his position as a Scoutmaster with the defendants to target, groom, and sexually abuse children, including Michael.

372.    The BSA and the Greater Niagara Council were supervising Michael, and had care, custody, and control of Michael, when he was a paying member of their Boy Scout Troop or participarting in their Scouting activities, including Troop merit badge projects and Scout camping trips, during which time those defendants had a duty to take reasonable steps to protect him.

373.    These circumstances created a special relationship between the BSA and Michael, and between the Greater Niagara Council and Michael, which imposed on each of those defendants a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

60

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 63 of 78

374.    The BSA and the Greater Niagara Council breached each of the foregoing duties by failing to exercise reasonable care to prevent Eberhardt from harming Michael, including sexually abusing him.

375.    In breaching their duties, including hiring, retaining, and failing to supervise Eberhardt, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Michael, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Michael and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council created a risk that Michael would be sexually abused by Eberhardt. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed Michael in danger of unreasonable risks of harm under the circumstances.

376.    In breaching their duties, including hiring, retaining, and failing to supervise Eberhardt, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Michael, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Michael and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council acted willfully and with conscious disregard for the need to protect Michael. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed Michael in danger of unreasonable risks of harm under the circumstances.

377.    It was reasonably foreseeable that defendants' breach of these duties of care would result in the sexual abuse of Michael.

61

378.    As a direct and proximate result of the acts and omissions of the BSA and the Greater Niagara Council, Eberhardt groomed and sexually abused Michael, which has caused Michael to suffer general and special damages as more fully described herein.

**B.     SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

379.    Plaintiff Michael Schall repeats and re-alleges all of his allegations above and below.

380.    The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by providing Eberhardt with access to children, including plaintiff Michael Schall, despite knowing that he would likely use his position to groom and to sexually abuse them, including Michael. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

381.    The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by representing to Michael and his family that Eberhardt was safe and trustworthy, and that all Scout leaders and volunteers were safe and trustworthy, despite the fact that these defendants knew that sexual predators, like Eberhardt, were using their positions in Scouting to groom and to sexually abuse children.  Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

382.    As a result of this reckless, extreme, and outrageous conduct, Eberhardt used his position with the defendant to gain access to Michael and to sexually abuse him.

Case 1:20-cv-00226-FPG   Document 1-2   Filed 02/18/20   Page 65 of 78

383.    The BSA and the Greater Niagara Council knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and Michael did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

## XI.    CAUSES OF ACTION AS TO PLAINTIFF DANIEL TRAINA
### A.    FIRST CAUSE OF ACTION – NEGLIGENCE

384.    Plaintiff Daniel Traina repeats and re-alleges all of his allegations above and below.

385.    The BSA and the Greater Niagara Council had a duty to take reasonable steps to protect plaintiff Daniel Traina, a child, from foreseeable harm when he was under their supervision and in their care, custody, and control.

386.    The BSA and the Greater Niagara Council also had a duty to take reasonable steps to prevent Moll from using the tasks, premises, and instrumentalities of his position as an Assistant Scoutmaster with the defendants to target, groom, and sexually abuse children, including Daniel.

387.    The BSA and the Greater Niagara Council were supervising Daniel, and had care, custody, and control of Daniel, when he was a paying member of their Boy Scout Troop or participarting in their Scouting activities, including Scout camping trips at Schoellkopf Scout Reservation and other properties near Bonds Lake, in and around Buffalo, New York, during which time those defendants had a duty to take reasonable steps to protect him.

388.    These circumstances created a special relationship between the BSA and Daniel, and between the Greater Niagara Council and Daniel, which imposed on each of those defendants a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

Case 1:20-cv-00226-FPG   Document 1-2   Filed 02/18/20   Page 66 of 78

389.     The BSA and the Greater Niagara Council breached each of the foregoing duties by failing to exercise reasonable care to prevent Moll from harming Daniel, including sexually abusing him.

390.     In breaching their duties, including hiring, retaining, and failing to supervise Moll, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Daniel, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Daniel and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council created a risk that Daniel would be sexually abused by Moll. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed Daniel in danger of unreasonable risks of harm under the circumstances.

391.     In breaching their duties, including hiring, retaining, and failing to supervise Moll, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Daniel, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Daniel and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council acted willfully and with conscious disregard for the need to protect Daniel. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed Daniel in danger of unreasonable risks of harm under the circumstances.

392.     It was reasonably foreseeable that defendants' breach of these duties of care would result in the sexual abuse of Daniel.

64

393.   As a direct and proximate result of the acts and omissions of the BSA and the Greater Niagara Council, Moll groomed and sexually abused Daniel, which has caused Daniel to suffer general and special damages as more fully described herein.

**B.   SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

394.   Plaintiff Daniel Traina repeats and re-alleges all of his allegations above and below.

395.   The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by providing Moll with access to children, including plaintiff Daniel Traina, despite knowing that he would likely use his position to groom and to sexually abuse them, including Daniel. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

396.   The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by representing to Daniel and his family that Moll was safe and trustworthy, and that all Scout leaders and volunteers were safe and trustworthy, despite the fact that these defendants knew that sexual predators, like Moll, were using their positions in Scouting to groom and to sexually abuse children.  Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

397.   As a result of this reckless, extreme, and outrageous conduct, Moll used his position with the defendant to gain access to Daniel and to sexually abuse him.

398.   The BSA and the Greater Niagara Council knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and Daniel did in fact suffer severe emotional and psychological distress

and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

### XII.    CAUSES OF ACTION AS TO PLAINTIFF ROBERT O'DONNELL
#### A.    FIRST CAUSE OF ACTION – NEGLIGENCE

399.    Plaintiff Robert O'Donnell repeats and re-alleges all of his allegations above and below.

400.    The BSA and the Greater Niagara Council had a duty to take reasonable steps to protect plaintiff Robert O'Donnell, a child, from foreseeable harm when he was under their supervision and in their care, custody, and control.

401.    The BSA and the Greater Niagara Council also had a duty to take reasonable steps to prevent Williams from using the tasks, premises, and instrumentalities of his position as a Scoutmaster with the defendants to target, groom, and sexually abuse children, including Robert.

402.    The BSA and the Greater Niagara Council were supervising Robert, and had care, custody, and control of Robert, when he was a paying member of their Boy Scout Troop or participarting in their Scouting activities, including Scout camping trips, Troop merit badge projects, and Troop meetings, during which time those defendants had a duty to take reasonable steps to protect him.

403.    These circumstances created a special relationship between the BSA and Robert, and between the Greater Niagara Council and Robert, which imposed on each of those defendants a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

404.    The BSA and the Greater Niagara Council breached each of the foregoing duties by failing to exercise reasonable care to prevent Williams from harming Robert, including sexually abusing him.

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 69 of 78

405.    In breaching their duties, including hiring, retaining, and failing to supervise Williams, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Robert, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Robert and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council created a risk that Robert would be sexually abused by Williams. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed Robert in danger of unreasonable risks of harm under the circumstances.

406.    In breaching their duties, including hiring, retaining, and failing to supervise Williams, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn Robert, his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for Robert and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council acted willfully and with conscious disregard for the need to protect Robert. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed Robert in danger of unreasonable risks of harm under the circumstances.

407.    It was reasonably foreseeable that defendants' breach of these duties of care would result in the sexual abuse of Robert.

408.    As a direct and proximate result of the acts and omissions of the BSA and the Greater Niagara Council, Williams groomed and sexually abused Robert, which has caused Robert to suffer general and special damages as more fully described herein.

**B.      SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

409.    Plaintiff Robert O'Donnell repeats and re-alleges all of his allegations above and below.

410.    The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by providing Williams with access to children, including plaintiff Robert O'Donnell, despite knowing that he would likely use his position to groom and to sexually abuse them, including Robert. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

411.    The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by representing to Robert and his family that Williams was safe and trustworthy, and that all Scout leaders and volunteers were safe and trustworthy, despite the fact that these defendants knew that sexual predators, like Williams, were using their positions in Scouting to groom and to sexually abuse children. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

412.    As a result of this reckless, extreme, and outrageous conduct, Williams used his position with the defendant to gain access to Robert and to sexually abuse him.

413.    The BSA and the Greater Niagara Council knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and Robert did in fact suffer severe emotional and psychological distress

68

and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

## XIII.   CAUSES OF ACTION AS TO PLAINTIFF T.T.
### A.   FIRST CAUSE OF ACTION – NEGLIGENCE

414.   Plaintiff T.T. repeats and re-alleges all of his allegations above and below.

415.   The BSA and the Greater Niagara Council had a duty to take reasonable steps to protect plaintiff T.T., a child, from foreseeable harm when he was under their supervision and in their care, custody, and control.

416.   The BSA and the Greater Niagara Council also had a duty to take reasonable steps to prevent Moll from using the tasks, premises, and instrumentalities of his position as Assistant Scoutmaster with the defendants to target, groom, and sexually abuse children, including T.T.

417.   The BSA and the Greater Niagara Council were supervising T.T., and had care, custody, and control of T.T., when he was a paying member of their Boy Scout Troop or participarting in their Scouting activities, during which time those defendants had a duty to take reasonable steps to protect him, including Scout camping trips on properties owned by the defendants in and around Buffalo, New York, such as Camp Scouthaven.

418.   These circumstances created a special relationship between the BSA and T.T., and between the Greater Niagara Council and T.T., which imposed on each of those defendants a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

419.   The BSA and the Greater Niagara Council breached each of the foregoing duties by failing to exercise reasonable care to prevent Moll from harming T.T., including sexually abusing him.

420.   In breaching their duties, including hiring, retaining, and failing to supervise Moll, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing

69

to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn T.T., his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for T.T. and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council created a risk that T.T. would be sexually abused by Moll. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed T.T. in danger of unreasonable risks of harm under the circumstances.

421.    In breaching their duties, including hiring, retaining, and failing to supervise Moll, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn T.T., his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for T.T. and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council acted willfully and with conscious disregard for the need to protect T.T. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed T.T. in danger of unreasonable risks of harm under the circumstances.

422.    It was reasonably foreseeable that defendants' breach of these duties of care would result in the sexual abuse of T.T.

423.    As a direct and proximate result of the acts and omissions of the BSA and the Greater Niagara Council, Moll groomed and sexually abused T.T., which has caused T.T. to suffer general and special damages as more fully described herein.

**B.      SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

424.    Plaintiff T.T. repeats and re-alleges all of his allegations above and below.

425.    The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by providing Moll with access to children, including plaintiff T.T., despite knowing that he would likely use his position to groom and to sexually abuse them, including T.T. Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an uT.T.er disregard by them of the consequences that would follow.

426.    The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by representing to T.T. and his family that Moll was safe and trustworthy, and that all Scout leaders and volunteers were safe and trustworthy, despite the fact that these defendants knew that sexual predators, like Moll, were using their positions in Scouting to groom and to sexually abuse children.  Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

427.    As a result of this reckless, extreme, and outrageous conduct, Moll used his position with the defendant to gain access to T.T. and to sexually abuse him.

428.    The BSA and the Greater Niagara Council knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and T.T. did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

## XIV.   CAUSES OF ACTION AS TO PLAINTIFF M.J.D.
### A.        FIRST CAUSE OF ACTION – NEGLIGENCE

429.    Plaintiff M.J.D. repeats and re-alleges all of his allegations above and below.

71

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 74 of 78

430.    The BSA and the Greater Niagara Council had a duty to take reasonable steps to protect plaintiff M.J.D., a child, from foreseeable harm when he was under their supervision and in their care, custody, and control.

431.    The BSA and the Greater Niagara Council also had a duty to take reasonable steps to prevent Grimm from using the tasks, premises, and instrumentalities of his position as a Scoutmaster with the defendants to target, groom, and sexually abuse children, including M.J.D.

432.    The BSA and the Greater Niagara Council were supervising M.J.D., and had care, custody, and control of M.J.D., when he was a paying member of their Boy Scout Troop or participarting in their Scouting activities, including Scout camping trips and Troop merit badge projects, during which time those defendants had a duty to take reasonable steps to protect him.

433.    These circumstances created a special relationship between the BSA and M.J.D., and between the Greater Niagara Council and M.J.D., which imposed on each of those defendants a duty to exercise the degree of care of a parent of ordinary prudence in comparable circumstances.

434.    The BSA and the Greater Niagara Council breached each of the foregoing duties by failing to exercise reasonable care to prevent Grimm from harming M.J.D., including sexually abusing him.

435.    In breaching their duties, including hiring, retaining, and failing to supervise Grimm, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn M.J.D., his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for M.J.D. and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council created a risk that M.J.D. would be sexually abused by Grimm. The BSA and the

72

Greater Niagara Council through their actions and inactions created an environment that placed M.J.D. in danger of unreasonable risks of harm under the circumstances.

436.     In breaching their duties, including hiring, retaining, and failing to supervise Grimm, giving him access to children, entrusting their tasks, premises, and instrumentalities to him, failing to train their personnel in the signs of sexual predation and to protect children from sexual abuse and other harm, failing to warn M.J.D., his parents, and other parents of the danger of sexual abuse, and failing to create a safe and secure environment for M.J.D. and other children who were under their supervision and in their care, custody, and control, the BSA and the Greater Niagara Council acted willfully and with conscious disregard for the need to protect M.J.D. The BSA and the Greater Niagara Council through their actions and inactions created an environment that placed M.J.D. in danger of unreasonable risks of harm under the circumstances.

437.     It was reasonably foreseeable that defendants' breach of these duties of care would result in the sexual abuse of M.J.D.

438.     As a direct and proximate result of the acts and omissions of the BSA and the Greater Niagara Council, Grimm groomed and sexually abused M.J.D., which has caused M.J.D. to suffer general and special damages as more fully described herein.

**B.   SECOND CAUSE OF ACTION – OUTRAGE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

439.     Plaintiff M.J.D. repeats and re-alleges all of his allegations above and below.

440.     The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by providing Grimm with access to children, including plaintiff M.J.D., despite knowing that he would likely use his position to groom and to sexually abuse them, including M.J.D. Their misconduct was so shocking and outrageous that it exceeds the reasonable

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 76 of 78

bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

441.    The BSA and the Greater Niagara Council engaged in reckless, extreme, and outrageous conduct by representing to M.J.D. and his family that Grimm was safe and trustworthy, and that all Scout leaders and volunteers were safe and trustworthy, despite the fact that these defendants knew that sexual predators, like Grimm, were using their positions in Scouting to groom and to sexually abuse children.  Their misconduct was so shocking and outrageous that it exceeds the reasonable bounds of decency as measured by what the average member of the community would tolerate and demonstrates an utter disregard by them of the consequences that would follow.

442.    As a result of this reckless, extreme, and outrageous conduct, Grimm used his position with the defendant to gain access to M.J.D. and to sexually abuse him.

443.    The BSA and the Greater Niagara Council knew that this reckless, extreme, and outrageous conduct would inflict severe emotional and psychological distress, including personal physical injury, on others, and M.J.D. did in fact suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation and emotional and physical distress.

## XV.    CPLR 1603 – NO APPORTIONMENT OF LIABILITY

444.    Pursuant to CPLR 1603, the foregoing causes of action are exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602, including but not limited to, CPLR 1602(2), CPLR 1602(5), 1602(7) and 1602(11), thus precluding defendants from limiting their liability by apportioning some portion of liability to any joint tortfeasor.

## XVI.   PRAYER FOR RELIEF

445.   The plaintiffs demand judgment against the defendants named in their causes of action, together with compensatory and punitive damages to be determined at trial, and the interest, cost and disbursements pursuant to their causes of action, and such other and further relief as the Court deems just and proper.

446.   The plaintiffs specifically reserve the right to pursue additional causes of action, other than those outlined above, that are supported by the facts pleaded or that may be supported by other facts learned in discovery.

Dated:  August 14, 2019

Respectfully Yours,

MARSH LAW FIRM PLLC

By _____

James R. Marsh
151 East Post Road, Suite 102
White Plains, NY 10601-5210
Phone: 929-232-3235
jamesmarsh@marsh.law

Jennifer Freeman
356 Golfview Road, Suite 1207
North Palm Beach, FL 33408
Phone: 929-232-3128
jenniferfreeman@marsh.law

75

Case 1:20-cv-00220-FPG   Document 1-2   Filed 02/18/20   Page 78 of 78

PFAU COCHRAN VERTETIS AMALA PLLC


By _____

Michael T. Pfau
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone:  206-462-4335
michael@pcvalaw.com
*Pro hac vice forthcoming*

Jason P. Amala
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone:  206-462-4339
jason@pcvalaw.com
*Pro hac vice forthcoming*

Anelga Doumanian
403 Columbia St.
Suite 500
Seattle, WA 98104
Phone:  206-451-8260
adoumanian@pcvalaw.com

**Attorneys for Plaintiffs**